UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HOWARD LEE WHITE,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>ISIDRO BACA, *et al.*,<br><br>　　　　　　　　　　　Defendants. | Case No. 3:15-cv-00573-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

　　　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

　　　Before the court is Defendants' Motion for Summary Judgment (ECF Nos. 71, 71-1 to 71-13, 73-1, 73-2.) Plaintiff filed a response. (ECF No. 83.) Defendants filed a reply brief. (ECF Nos. 86, 86-1.) The court granted Plaintiff leave to file a sur-reply to respond to a declaration filed with Defendants' reply brief. (ECF No. 91.) The sur-reply is set forth at ECF No. 87.

　　　After a thorough review, the court recommends that Defendants' motion be granted.

## I. BACKGROUND

　　　Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (ECF No.49.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center. (*Id*.) Plaintiff was granted leave to file a Second Amended Complaint (SAC), which the court screened. (ECF No. 48.) The court permitted Plaintiff to proceed with the following two claims in the SAC: (1) an Eighth Amendment deliberate indifference to serious medical needs claim in Count I against Dr. Romeo Aranas, Jayson Brumfield, Mary Agnes Boni, Richard Geer, Jacob Council and Thomas Wyatt; and (2) a State law claim (negligence) based on a breach of the duty

allegedly imposed by Nevada Revised Statute (NRS) 209.381, against Brumfield, Geer, Council and Wyatt in Count II.

In Count I, Plaintiff alleges that he was diagnosed with diabetes in 2003, transferred to NNCC in 2008, and was ordered a 2000 calorie medical diet with a "H.S. snack" by his medical provider. He contends that he was never provided with the 2000 calorie medical diet, and instead was served the same meals as those served to the general population, which he contends are high in sugar, starch and carbohydrates and threaten his health.

In Count II, he alleges that Brumfield, Geer, Council and Wyatt breached their duty to ensure proper preparation and distribution of his medically prescribed diet in violation of NRS 209.381.

Defendants move for summary judgment.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

///

1   If a party relies on an affidavit or declaration to support or oppose a motion, it "must be
2   made on personal knowledge, set out facts that would be admissible in evidence, and show that
3   the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

4   In evaluating whether or not summary judgment is appropriate, three steps are necessary:
5   (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as
6   to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.
7   *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect
8   the outcome of the suit under the governing law will properly preclude the entry of summary
9   judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

10   In deciding a motion for summary judgment, the court applies a burden-shifting analysis.
11   "When the party moving for summary judgment would bear the burden of proof at trial, 'it must
12   come forward with evidence which would entitle it to a directed verdict if the evidence went
13   uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the
14   absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage*
15   *Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In
16   contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving
17   party can meet its burden in two ways: (1) by presenting evidence to negate an essential element
18   of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a
19   showing sufficient to establish an element essential to that party's case on which that party will
20   bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

21   If the moving party satisfies its initial burden, the burden shifts to the opposing party to
22   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*
23   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of
24   material fact, the opposing party need not establish a genuine dispute of material fact conclusively
25   in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to
26   resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec.*
27   *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted).
28   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Count I- Eighth Amendment Deliberate Indifference**

**1. Eighth Amendment Deliberate Indifference to Serious Medical Need Standard**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d

1  at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. Examples of conditions
2  that are "serious" in nature include "an injury that a reasonable doctor or patient would find
3  important and worthy of comment or treatment; the presence of a medical condition that
4  significantly affects an individual's daily activities; or the existence of chronic and substantial
5  pain." *McGuckin*, 974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.
6  2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was wired shut for
7  several months demonstrated a serious medical need).

8  If the medical need is "serious," the plaintiff must show that the defendant acted with
9  deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation
10 omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,
11 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or
12 even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under
13 section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a
14 prison official "knows of and disregards an excessive risk to inmate health or safety; the official
15 must both be aware of the facts from which the inference could be drawn that a substantial risk of
16 serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837
17 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

18 Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally
19 interfere[s] with medical treatment, or it may be shown by the way in which prison officials
20 provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation
21 marks and citation omitted).

22 **2. Analysis**

23 The court is not persuaded by Defendants' argument that Plaintiff lacks a serious medical
24 need. Apart from whether Plaintiff's own conduct in purchasing food may have exacerbated his
25 condition, Defendants admit Plaintiff has diabetes. The medical records submitted by Defendants
26 demonstrate that Plaintiff was seen and monitored regularly in NNCC's Chronic Care Clinic for
27 his diabetes. The relevant question, therefore, is whether Defendants were deliberately indifferent
28 to that serious medical need.

1    The court finds that Plaintiff has failed to raise a genuine dispute of material fact so as to
2 defeat Defendants' motion for summary judgment as to the subjective prong of his deliberate
3 indifference claim.

4    No one disputes that Plaintiff was prescribed a 2000 calorie medical diet. Defendants have
5 produced the records establishing as much (at least until January 24, 2018, when he was prescribed
6 the 2600 calorie medical diet). (ECF No. 73-1.)

7    Plaintiff claims, however, that he has never received his prescribed 2000 calorie medical
8 diet, and that this hindered his recovery from diabetes. (ECF No. 49 at 5 ¶ 3.) To that end, the SAC
9 as well as his briefing reference several days where he claims he receive meals with items totaling
10 under 2000 calories. (ECF No. 49 ¶ 7.) He claims he was provided the same meals as were served
11 to the general population, which are high in sugar, starch and carbohydrates, that threaten his health
12 and endanger his life. (*Id*. at 7 ¶ 13.)

### a. Dr. Aranas

14    Dr. Aranas has been the medical director of NDOC since August of 2013. (Aranas Decl.,
15 ECF No. 71-6 ¶ 3.) He receives inmate medical diet recommendations from various NDOC
16 practitioners, and evaluates the inmate's medical records to determine if they support the need for
17 the recommended diet, and if so, approves the diet. (*Id*. ¶ 5.) He is not at NNCC. (*Id*. ¶ 6.) He has
18 never evaluated Plaintiff, but acknowledges Plaintiff was previously approved for the 2000 calorie
19 medical diet, and that he has diabetes. (*Id*. ¶ 7.) He does not prepare or serve meals to inmates at
20 NNCC, nor does he oversee the preparation or service of meals there. (*Id*. ¶ 8.) He does not
21 supervise or instruct NNCC culinary staff. (*Id*. ¶ 9.)

22    According to Dr. Aranas, NNCC follows dietitian written and approved menus that follow
23 a four-week cycle for breakfast, lunch and dinner. (*Id*. ¶ 10.) All menus, including those prescribed
24 for medical reasons, such as Plaintiff's 2000 calorie a day menu, are reviewed and verified by a
25 licensed dietitian for nutritional adequacy, and he believes the menus are nutritionally adequate.
26 (*Id*.) He has no reason to believe the meals being prepared and served at NNCC are not in
27 accordance with the licensed dietitian verified menus. (*Id*. ¶ 11.)
28 ///

1    The only thing Plaintiff states in his response with respect to Dr. Aranas' involvement is
2 that at some unspecified time, Dr. Aranas advised Plaintiff to discuss his dietary needs with
3 Brumfield. (ECF No. 83 at 6 ¶15, ECF No. 83 at 8.) He argues that he has *sufficiently alleged facts*
4 *to state a claim* that Dr. Aranas and Brumfield acted with deliberate indifference because he
5 alleged that they both refused to honor the prescribed medical diet.

6    Plaintiff conflates the standard for what is required to *state a claim* (so that a complaint
7 may proceed in federal court) with the standard for summary judgment, which requires the
8 production of *evidence* sufficient to create a genuine dispute of material fact.

9    There is no evidence in the record that Dr. Aranas had any involvement other than to
10 approve Plaintiff for a prescribed 2000 calorie medical diet. He did not formulate the menus; he
11 did not oversee the preparation of the food for inmates at NNCC. Even taking as true Plaintiff's
12 claim that Dr. Aranas told him to talk to Brumfield about his concerns, that is not sufficient to find
13 he knew of and disregarded a serious risk to Plaintiff's health. Again, Plaintiff claims that he did
14 not receive his 2000 calorie prescribed medical diet, but has presented no evidence in response to
15 the motion that Dr. Aranas had any involvement with respect to the meals he was provided at
16 NNCC. Dr. Aranas' discovery responses that Plaintiff submitted support Dr. Aranas' position.

17    Dr. Aranas specifically denied that Plaintiff did not receive his 2000 calorie diet, stating
18 that inmates are given the exact amount of calories prescribed by their providers. (ECF No. 83 at
19 45, response to Request for Admission No. 3.) He also said to his knowledge, Brumfield provided
20 Plaintiff with the 2000 calorie diet as ordered. (ECF No. 83 at 46, response to Request for
21 Admission No. 8.)

22    Since Plaintiff has failed to raise as genuine dispute of material fact as to whether
23 Dr. Aranas was deliberately indifferent toward a serious medical need, the motion for summary
24 judgment should be granted as to Dr. Aranas.

25    **b. Boni**

26    Ms. Boni is a licensed dietitian in the State of Nevada. (Boni Decl., ECF No. 71-12 ¶ 3.)
27 From 2002 until July of 2017, she contracted with NDOC as a licensed dietitian to annually review
28 all NDOC menus, including special diet menus, for nutritional adequacy. (*Id*. ¶ 4.) She reiterates

- 7 -

1    Dr. Aranas' statement that NDOC follows dietitian written and approved menus that follow a four-
2    week cycle for breakfast, lunch and dinner, and all menus, including those prescribed for medical
3    reasons such as Plaintiffs, are reviewed and verified by a licensed dietitian for nutritional adequacy.
4    (*Id.* ¶ 5.) While she did not write or develop the "ESP Menus Special Diets" (despite use of "ESP"
5    in the title, the menus are used throughout NDOC), but she did review them for nutritional
6    adequacy. (*Id.* ¶¶ 6-7.) In her review, she analyzed food products and recipes for calorie and
7    nutritional content, using a criteria based on a male, 5'10" and 19-50 years old with low activity
8    level, which requires approximately 2500-2800 calories a day. (*Id.* ¶ 9.) The 2000 calorie a day
9    diet, *i.e.*, that prescribed to Plaintiff, does not meet all the minimum requirements for adult males
10   as specified by the Dietary Reference Intakes (DRIs) established by the Food and Nutrition Board
11   Institute of Medicine, National Academies, but this is because this diet, by design, is low in
12   calories. (*Id.*¶ 10.) She states that all other nutrients in this diet are nutritionally adequate for an
13   adult male. (*Id.*)

14   Ms. Boni did not prepare or serve meals to inmates at NNCC, including Plaintiff. (*Id.* ¶ 13.)
15   She did not oversee preparation or service of meals at NNCC, and she did not supervise or instruct
16   the culinary staff at NNCC. (*Id.* ¶¶ 13, 14.) She had no reason to believe the meals prepared at
17   NNCC were not in accordance with the menus she verified to be nutritionally adequate. (*Id.*¶ 15.)

18   Plaintiff's response does not focus specifically on Ms. Boni's involvement. Instead, his
19   argument seems to hinge on the fact that according to AR 269, the medical diet is to be developed
20   and written by a licensed dietitian, and Ms. Boni did not write or develop the medical diet at issue.
21   Plaintiff does not contest that she reviewed the menus and certified them as nutritionally adequate.
22   In fact, he provides her discovery responses that acknowledge that she did not develop the special
23   diet menus, but that she reviewed them. (ECF No. 83 at 113-115.) In one of her discovery
24   responses, she states she is qualified to certify that the diabetic menu served within NDOC is
25   appropriate for individuals with diabetes. (ECF No. 83 at 116.) Plaintiff provides no evidence to
26   refute this.

27   Who developed the diet is immaterial to Plaintiff's claim that *these defendants* were
28   deliberately indifferent and failed to provide him his prescribed diet. In any event, he presents no

1  evidence that the menu was not in fact developed by a dietitian. Regardless of who developed the
2  menu, Ms. Boni reviewed it and certified it as nutritionally adequate and Plaintiff presents no
3  specific evidence to contradict her testimony on this issue. Nor is there any evidence she had
4  anything to do with him allegedly not receiving his 2000 calorie prescribed diet. Therefore,
5  summary judgment should be granted in her favor.

### c. Brumfield, Council, Geer, and Wyatt

Brumfield is the food services manager at NNCC. (Brumfield Decl., ECF No. 71-9 ¶ 3.) Pursuant to AR 269 (ECF No. 71-10), he is to ensure inmates are provided with three meals a day within menu guidelines. (*Id*. ¶ 4.) The NNCC culinary department maintains a list of inmates and their prescribed medical diets. (*Id*. ¶ 5.) It also maintains dietitian approved instructions as to the quantity and/or portion size for every meal, as well as specific food items that are to be provided to inmates that are prescribed particular medical diets. (*Id*. ¶ 6.) There are specific dietitian approved instructions for each meal of every day in the meal cycle, as well as modifications, if any, to that meal dependent on the particular medical diet prescribed. (*Id*. ¶ 7.) By way of example, he states that an inmate prescribed a lower calorie diet may receive a smaller portion of cake, a piece of cake without frosting, or a cake alternative such as fruit to accommodate his medical needs. (*Id*.)

Inmates prescribed the medical diet must report to the designated line in the culinary to receive the appropriate meal for their diet. (*Id*. ¶ 8.) Inmates prescribed a medical diet may receive the same or similar food as inmates without a prescribed diet; however, the portions or preparation may be different, and/or there may be certain modifications to the food. (*Id*. ¶ 9.)

Brumfield was aware that Plaintiff was prescribed a "2000 cal. ADA with H.S. Snack" medical diet through July 22, 2017. (*Id*. ¶ 11.) According to Brumfield, the staff in the culinary under his supervision, including Food Service Cooks/Supervisors Geer, Wyatt and Council, provide inmates, including Plaintiff, with three meals a day within menu guidelines. (*Id*. ¶ 12.) In addition, he attests that the staff follow all medical diet orders provided by medical staff, including Plaintiff's prescribed diet. (*Id*. ¶ 13.) Finally, Brumfield maintains that Plaintiff receives meals in accordance with the licensed dietitian approved menus for his prescribed medical diet. (*Id*. ¶ 14.)

1    AR 269 states it is the responsibility of NDOC and its employees to provide inmates "with
2 nutritious, well-balanced meals within the constraints and guidelines" of the relevant statutes,
3 regulations, procedures, and state and federal health and safety requirements. (ECF 71-10 at 2.) It
4 provides, consistent with Brumfield's statement, that the culinary is to provide three meals a day
5 within menu guidelines. (*Id*.) With respect to medical diets, under AR 269, the diets will be
6 developed and reviewed by a licensed dietitian. (*Id*.)

7    Brumfield's discovery responses, which Plaintiff submitted in support of his response, only
8 bolster Brumfield's claim that he did not violate Plaintiff's rights. Brumfield stated that when a
9 physician orders a 2000 calorie diet for an inmate, he makes sure it is carried out in strict
10 compliance with the dietitian's written instructions. (ECF No. 83 at 38, response to Interrogatory
11 No. 13; *see also* ECF No. 83 at 84, response to Request for Admission 7 (culinary staff prepare
12 and serve the medical diets as written); ECF No. 83 at 84, response to Request for Admission 8 (if
13 Plaintiff shows up for his prescribed 2000 calorie diet, it will be honored. "At no time will
14 authorized diet ever be denied under my watch."; ECF No. 83 at 84, response to Request for
15 Admission No. 10 (would never deny a doctor's order or the Plaintiff's issue); ECF No. 83 at 85
16 (diet meals are served in accordance with special medical menu); ECF No. 83 at 87 (all prescribed
17 diets are issued by medical staff and culinary staff follow written instructions)).

18   Plaintiff's response states that Brumfield told him at some unspecified time that it was too
19 much of a hassle to prepare separate meals for 1400 inmates. Brumfield denied ever saying this in
20 his discovery responses. (ECF No. 83 at 35, response to Interrogatory No. 10.) Moreover, even if
21 Brumfield made this singular comment, Plaintiff has produced no actual evidence that Brumfield
22 failed to provide him with his prescribed meal.

23   With respect to Geer and Wyatt, the only specific discussion about their involvement is
24 that they are food service cooks/supervisors at NNCC, and that Geer has said on many occasions,
25 "well no, they are all the same," regarding serving diabetic food trays. (ECF No. 83 at 6 ¶ 17.)
26 Plaintiff provides no evidence to support his allegation that either of these defendants actually
27 denied him his prescribed 2000 calorie diet. He gives no context to Geer's purported statement.
28 While he disputes that the preparation or portions of meals are different, he acknowledges in his

1    sur-reply that substitutions of food are made. In discovery, he asked about one particular occasion
2    where the meals were the same, and Geer responded that for that meal, the diabetic diet was the
3    same as the mainline meal. (ECF No. 83 at 94.) Plaintiff does not submit evidence, however, that
4    this particular meal nutritionally inadequate or deficient in calories.

5    Plaintiff provides declarations of various inmates in support of his response, but none of
6    these declarations prove that *Plaintiff* was not given his prescribed 2000 calorie diet, or that
7    *Plaintiff* was exposed to a serious risk of harm as a result of the meals he was served in the NNCC
8    culinary.

9    Defendants provide evidence that it prepares meals in accordance with a menu approved
10   by a licensed dietitian and that they prepare and serve meals in accordance with all medical diet
11   orders provided by medical staff; and that Plaintiff's meals were prepared and served in accordance
12   with the 2000 calorie diet.

13   Throughout this litigation, Plaintiff has asserted his conclusions that he receives the same
14   meal as the rest of the inmate population and that is somehow nutritionally inadequate without
15   providing any specifics about how he has come to those conclusions or pointing to any evidence
16   to support them. The court agrees with Defendants that Plaintiff makes allegations that his meals
17   are too high in sugar, starch and carbohydrates, but he does not present any *evidence* that this was
18   the case. Nor does he provide a sufficient explanation for his canteen purchase history, which
19   includes repeated purchase of items that are high in sugar, starch and carbohydrates (Hawaiian
20   punch, cookies, chips, soda, ramen, pastries, buttered popcorn, doughnuts, candy, jelly, ice cream,
21   crackers). (ECF No. 71-2.) He argues that Defendants condoned his purchase of canteen items to
22   supplement his diet, but provides no *evidence* they did this. Nor does he explain his choice of items
23   that would appear to pose the same nutritional risks he claims Defendants exposed him to.

24   Defendants have submitted evidence that the meals served to inmates on prescribed
25   medical diets may look the same, but there may be differences in portions, preparation or
26   modifications made to conform to the applicable diet. Plaintiff acknowledges in his sur-reply that
27   modifications are made, though he refers to them as substitutions. He maintains that there are no
28   differences in portions or preparation but does not expand on how he knows that. Nor does he

1 provide any factual evidence to support his conclusions.

2 Plaintiff has produced zero evidence that the diet he was provided with at NNCC, whatever the makeup and caloric level, posed a risk of serious harm to his health. His response references that he experienced high blood sugar, but he does not discuss this allegation or describe his symptoms in his declaration, or provide evidence of this by way of medical records. Nor is there evidence connecting this to the diet received at NNCC. There are no notations in the medical records submitted by Defendants discussing his meals served by NNCC or that they may be contributing to his ability to control his diabetes.

Plaintiff's SAC, as well as his declaration in the sur-reply, state that on several days, the meals served did not amount to 2000 calories. He goes on to list out food items included with the meals and calorie totals. He does not present evidence of how he calculated the caloric value of the items. Nor does he submit evidence that he complained to any of the named defendants that his meals on these dates did not meet the 2000 calorie threshold, or that eating this purportedly calorie deficient diet, resulted in any actual adverse effect to his health.

In sum, the court finds Plaintiff has failed to raise a genuine dispute of material fact as to whether these Defendants were deliberately indifferent to a serious medical need; therefore, summary judgment should be granted in their favor.

**B. Count II-Negligence**

A claim for negligence in Nevada requires a Plaintiff to demonstrate "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *DeBoer v. Sr. Bridges of Sparks Farm. Hosp.*, 282 P.3d 727, 732, 128 Nev. 406, 412 (2012) (citation omitted).

NRS 209.381 provides that inmates must be provided "a healthful diet."

Defendants argue there is no evidence Plaintiff does not receive a "healthful" diet, particularly when a licensed dietician has approved the diet as nutritionally adequate, and the menus has also been prescribed by medical personnel. These Defendants contend they simply followed the menus approved for use by the dietician and medical personnel.

///

1    In addition, Defendants contend Plaintiff cannot prove that any purported breach of their
2    duty to provide healthful meals was the legal cause of his alleged injuries. He claims he has
3    suffered serious mental anguish, anxiety, nerve damage, pain, and emotional and physical distress,
4    but they claim this is not supported by his medical records.

5    The court finds, again, that Plaintiff has failed to raise a genuine dispute of material fact to
6    defeat Defendants' motion in this regard. As pointed out by Defendants, Plaintiff provides a
7    conclusion that the meals he received were high in sugar, starch and carbohydrates, but points to
8    no specific evidence that this was the case. Importantly, he fails to demonstrate, by citing specific
9    evidence, that eating the meals served by NNCC caused any adverse health impact so as to
10   demonstrate that any alleged breached was the legal cause of his injuries, or that he suffered
11   damages. Therefore, summary judgment should be granted in Defendants favor with respect to the
12   negligence claim as well.

**C. Statute of Limitations**

14   Defendants argue that to the extent Plaintiff alleges claims stemming from incidents
15   occurring from November 2010 forward, he did not file his complaint until November 23, 2015;
16   therefore, they assert that claims arising from incidents prior to November 23, 2013, are barred by
17   the statute of limitations. Plaintiff acknowledges in his response that the conduct related to this
18   lawsuit took place between September 2014 and June 27, 2017.

**D. Qualified Immunity**

20   In light of the court's conclusion that summary judgment be granted in Defendants' favor,
21   it need not reach the qualified immunity argument.

**IV. RECOMMENDATION**

23   **IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING**
24   Defendants' Motion for Summary Judgment (ECF No. 71).

25   The parties should be aware of the following:
26   1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to
27   this Report and Recommendation within fourteen days of receipt. These objections should be titled
28   "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by

1  points and authorities for consideration by the district judge.

2      2. That this Report and Recommendation is not an appealable order and that any notice of
3  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed
4  until entry of judgment by the district court.

5      DATED: August 21, 2018.

*/s/ William G. Cobb*
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE